1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BARIC TRAN & MINESINGER**
Steven D. Baric (State Bar # 200066)
2603 Main Street, Suite 1050
Irvine, CA 92614
Telephone:  949. 468.1047
Fax:            949-251-1886
Email:         sbaric@bamlawyers.com

**SULLIVAN & ASSOCIATES, PLLC**
Paul Sullivan, SBN 088138
601 Pennsylvania Ave. N.W., Suite 900
Washington, D.C.  20004
Telephone:        202-434-8263
Email:             paul@psullivanlaw.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE RADANOVICH, CHARLES PATRICK, GWEN PATRICK, OMAR NAVARRO, TRUNG PHAN <br><br> Plaintiffs <br><br> v. <br><br><br> DEBRA BOWEN, in her official capacity as SECRETARY OF STATE OF CALIFORNIA; THE CITIZENS REDISTRICTING COMMISSION <br><br> Defendants | Case #:  2:11-cv-09786-SVW (PJW) <br><br> **PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' COMPLAINT** <br><br><br> Date: February 13, 2012 <br> Time:        1:30 pm <br> Ctrm:        6 <br><br> [Honorable Stephen V. Wilson] |

i

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................ 1

II.   RELEVANT FACTUAL BACKGROUND ....................................................................... 2

III.  THIS CASE IS NOT BARRED BY RES JUDICATA AND THEREFORE DEFENDANTS
      MOTION TO DISMISS SHOULD BE DENIED. .............................................................. 5

      A.  Because This Case is Based on Federal Question Subject Matter Jurisdiction The Federal Law
          Regarding Res Judicata Must Apply. .................................................................... 6

      B.  APPLYING FEDERAL LAW THIS CASE IS NOT BARRED BY RES JUDICATA BECAUSE
          THERE WAS NO FINAL JUDGMENT ON THE MERITS. ........................................... 8

      C.  ASSUMING STATE LAW APPLIES THIS CASE IS STILL NOT BARRED BY RES
          JUDICATA BECAUSE THERE WAS NOT A FINAL JUDGMENT ON THE MERITS. ....... 9

IV.   STATE LAW CAN NOT PRECLUDE FEDERAL REMEDIES. ......................................... 11

V.    PLAINTIFFS THIRD CLAIM FOR RELIEF STATES SUFFICIENT FACTS TO SUPPORT A
      CLAIM UNDER SECTION 5 OF THE VOTING RIGHTS ACT. ...................................... 12

VI.   CONCLUSION. ........................................................................................................ 14

ii

# TABLE OF AUTHORITIES

<u>STATUTES</u>

Federal Rule of Civil Procedure 8 ------------------------------------------------------------- 13

<u>STATE CASES</u>

*California Supreme Court in Legislature v. Reinecke*, 10 Cal 3rd 396 (1973) -------------------------- 2, 4

*People v. Medina*, 6 Cal.3d 484 (1972) ------------------------------------------------------ 10

*Wilson v. Eu 1 Cal.4th 707* --------------------------------------------------------------- 2, 3, 4

<u>FEDERAL CASES</u>

*Adams Fruit Co., Inc. v. Barrett* 494 U.S. 638 (1990) --------------------------------------- 11, 12

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)------------------------------------------------- 12

*Bell Atl. Corp. v. Townbly*, 550 U.S. 544 (2007)------------------------------------------------- 12, 13

*Henrichs v. Valley View Dev.*, 474 F. 609 ----------------------------------------------------- 6, 7

*In re Iannochino*, 242 F.3d 36 (1st Cir. 2001)-------------------------------------------------- 6

*Napa Valley Electric Co. v. Railroad Commission*, 251 U.S. 366------------------------------- 9, 10

*Pacific Tel. & Tel. Co. v. Public Utilities Com.*, 600 F.2d 1309, 1312 (9th Cir. 1979) ----------------- 9, 10

<u>STATE CONSTITUTIONAL PROVISIONS</u>

California Constitution Article XXI, §2-------------------------------------------------------1, 2, 3, 4, 5

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This is a case of first impression.  Plaintiffs have alleged serious violations of the 14th Amendment and §2 of the Voting Rights Act.  These issues require a fair and complete hearing in a court of law.  However, to date these serious federal issues have been denied their fair and complete hearing and Plaintiffs have been denied their potential federal remedies by application of state law.  This complaint challenges certified maps for the California Congressional maps that were adopted on August 15, 2011 by the Citizens' Redistricting Commission ("Commission"), pursuant to the Commission's mandate under Article XXI, §2 of the California Constitution to redistrict California following the decennial census of 2010.

These federal constitutional violations are significant.  The failure to create Voting Rights Act (VRA) Section 2 African-American Congressional Districts in the heart of Los Angeles makes it very conceivable that this area will have not African-American representation in the next ten years.  Also, because the Commission gerrymandered three (3) African-American Congressional Districts based predominantly upon race, its actions unconstitutionally impacted the rights of California's Latinos population, who are the fastest growing voting block Latino's since 1980.  The Latino population has grown by 50% based upon voting population.  The Commission had had a statutory obligation pursuant to the Voting Rights Act and the Equal Protection Clause of the U.S. Constitution to provide for one or two African American majority minority districts and thereby an additional majority minority Latino Congressional District.

Defendant has filed a motion to dismiss on the grounds that (1) the claims are barred by Res Judicata and (2) that as to count 3 Plaintiffs have failed to allege facts sufficient to sustain a cause of action.

/ / /

1   Plaintiffs hereby opposes defendants motion to dismiss on the grounds that (1)

2   because there was not final adjudication on the merits, this complaint is not subject to

3   Res Judicata; (2) that state law cannot preclude federal remedies in this case; and (3)

4   Plaintiffs have pled sufficient facts to support a §5 challenge pursuant to VRA.

5

6   **II.   RELEVANT FACTUAL BACKGROUND**

7         On November 4, 2008, California voters adopted Proposition 11. Proposition 11

8   amended Article XXI of the California Constitution to substitute a newly-created

9   Citizens Redistricting Commission in the place of the Legislature to "adjust the

10  boundary lines" of State Legislative and Board of Equalization districts following each

11  decennial census and provided that the Commission shall "conduct an open and

12  transparent process enabling full public consideration of and comment on the drawing of

13  district lines, draw district lines in accordance with the criteria in this article, and

14  conduct themselves with integrity and fairness." (Article XXI, §2(b).)

15        Proposition 20, adopted by the voters of California on November 2, 2010, and

16  established a formula for composing the Citizens Redistricting Commission (Article.

17  XXI, §2(c)(2)-(6), and provided that the selection process for selecting Commissioners

18  "is designed to produce a Commission that is independent from legislative influence and

19  reasonably representative of the State's diversity." (Article XXI, § 2(c)(1).)

20        In addition, Proposition 11 amended the Article XXI "criteria" for redistricting.

21  Article XXI, §2(d)(1) had provided that redistricting must first comply with the federal

22  Constitution's equal population requirements and the California Constitution's

23  reasonably equal population requirements, and pursuant to the federal Supremacy

24  Clause, the federal Voting Rights Act of 1965, as amended ("VRA"). After these priority

25  requirements, Proposition 11 supplemented and adopted almost verbatim the criteria

26  formulated by the *California Supreme Court in Legislature v. Reinecke*, 10 Cal 3rd 396

27  (1973) ("*Reinecke*") and *Wilson v. Eu I Cal.4th 707* ("*Wilson*") decisions.

28  ///

Proposition 11 also provides specially for original and exclusive jurisdiction of the Supreme Court to hear claims against the Commission's certified maps. (Article XXI, §3(b)(1).)   Any voter is authorized to file a petition challenging the Commission's certified maps in the Supreme Court, within 45 days of the Commission's act of certification of the maps. (Article XXI, §3(b)(2).) The Court is authorized upon finding that a map of each type of district violated the federal or state constitutions or laws to authorize special masters to draw new boundaries for districts, and if the Court approved the special masters' boundaries, to certify these new boundaries for each type of district to the Secretary of State for implementation. (Article XXI, §3(b)(3).)

Proposition 11 left redistricting of Congressional districts to the Legislature. However, on November 2, 2010, after the proceedings to establish the Commission was underway, the voters of California adopted Proposition 20, which authorized the Commission also to adopt Congressional district maps following the decennial census.

Proposition 20 also defined the term "communities of interest" as used in Article XXI, §2(d). Proposition 20 also moved the certification date for Commission action on district maps from September 15 of the year following the decennial census to August 15. (Article XXI, §2(g).)

Proposition 20 added the concept of respecting "local neighborhoods" and "local communities of interest." The Oxford American Dictionary 1980, page 388, defines "local" as "belonging to a particular place, or a small area; of the neighborhood and not long distance". In forming districts this means combining close-by areas, not distant populations that by their nature cannot be "local communities of interest." (Quinn Dec., ¶ 43.)

The constitutional requirements that "nearby areas of population are not bypassed for more distant population" and that districts must "respect local communities of interest" complement each other. They provide context for the term "compactness" in that districts must contain "local" and "nearby" populations. This language was taken verbatim from the Masters report in Wilson, and the 1991 Masters noted that its origin

1 | was the 1973 *Reinecke* decision.  (*Wilson*, supra, 1 Cal. 4th at pp. 719& 761, citing
2 | *Reinecke*, supra, 10 Cal.3d at p. 412.)

3 |     Proposition 20 resolves the conflict between precedents by making clear that in
4 | the truncated redistricting process, the Court may use Special Masters to correct the
5 | district lines.  Article XXI §3(b)(3).  The Supreme Court is required to "give priority to
6 | ruling on a petition for writ of mandate or prohibition filed pursuant to Section 3(b)(2)
7 | whether on the merits of a substantive legal challenge. (Id.)

8 |                    **Commission Certification of Congressional District Maps**

9 |     The full 14-member Commission was selected according to the processes set forth
10 | in Proposition 11 and established as of December 15, 2010.  In the ensuing period from
11 | December 15, 2010 to August 15, 2011, the Commission hired an executive director and
12 | staff; hired demographic/line-drawing consultants, Voting Rights Act counsel, Gibson
13 | Dunn and a special "racially polarized voting" consultant, Dr. Barreto;  held public
14 | meetings to hear comment and testimony from members of the public and groups and
15 | individuals who submitted proposed district maps of their own,  prior to June 10, 2011,
16 | when it released the first draft maps for Congressional, state legislative and Board of
17 | Equalization districts; held subsequent public meetings prior to releasing "preliminary
18 | final maps" for these four types of districts on July 29, 2011; and adopted resolutions
19 | certifying the "final maps" (which were unchanged from the "preliminary final maps"
20 | that had been publicly-released on July 29, 2011) on August 15, 2011; issued, "State of
21 | California Citizens Redistricting Commission Final Report On 2011 Redistricting,
22 | August 15, 2011 (Final Report) a true and complete copy of which is attached hereto at
23 | Exhibit "6" to the Request for Judicial Notice and fully incorporated herein.

24 |     The Final Report, at pp. 52-62 sets forth its findings and reasons for adopting the
25 | certified Congressional maps, on a district-by-district basis.

26 |     The Commission received substantial testimony from members of the public
27 | concerning the Congressional districts, in particular with respect to the Commission's
28 | adherence to the criteria set forth in Article XXI, §2(d), in particular,   whether the

proposed first draft maps released on June 10, 2011 and preliminary final maps released on July 29, 2011 were fair and impartial; whether they achieved population equality standards of Article XXI, §2(b); whether they complied with sections 2 and 5 of the Voting Rights Act (28 USCA §§1973 (a) and 1973(c)); whether they were compact and contiguous; whether they unnecessarily divided geographic, city and county boundaries; what constituted communities of interest  and whether these maps united or divided communities of interest, or combined populations that were not communities of interest. (Commission's Final Report, (Final Report pp. 3-5).

### Commission Hijacked

Since the Commission issued their final report there has been reports of the process being hijacked and manipulated by political operatives.  Reports in the media have suggested that several groups manufactured testimony to manipulate the commission. (a copy is attached to the Request for Judicial Notice as "Exhibit 1".)

### Filing of Radanovich v. Bowen in the California Supreme Court

On September 29, 2011, Plaintiffs filed their petition in the California Supreme Court, alleging that the Commission's certified U.S. Congressional maps violated California Law, the 14th Amendment and Sections 2 and 5 of the Voting Rights Act, as incorporated in Article XXI of the California Constitution.  On October 11, 2011, the Commission filed its Consolidated Preliminary Opposition and on October 17, 2011 Plaintiffs filed a 19 page reply brief.  On October 26, 2011 the California Supreme Court issued a one page minute order denying Plaintiffs request for relief.

### ARGUMENT

## III. THIS CASE IS NOT BARRED BY RES JUDICATA AND THEREFORE DEFENDANTS MOTION TO DISMISS SHOULD BE DENIED

Defendant's motion to dismiss should be denied for the following reasons: (1) Federal law involving Res Judicata applies rather than state law (2) when applying

1   federal law a full judgment on the merits was not rendered and therefore there was not a
2   complete adjudication on the merits and (3) assuming State law applies a full hearing on
3   the merits was not conducted and therefore this case is not barred and (4) California
4   State law cannot preclude remedies under Federal Law.

5

6        A.    *Because This Case is Based on Federal Question Subject Matter*
7           *Jurisdiction The Federal Law Regarding Res Judicata Must Apply*

8        It has been generally held or recognized that federal law is controlling as to the
9   applicability of the doctrine of res judicata or collateral estoppel in a non-diversity action
10  in a federal court, at least where the issues involved in the prior judgment were issues of
11  federal law. *In re Iannochino*, 242 F.3d 36 (1st Cir. 2001). Applicability of res judicata
12  and collateral estoppel to a judgment entered by a federal court exercising federal
13  question jurisdiction was a matter of federal law. *Ramallo Bros. Printing, Inc. v. El Dia,*
14  *Inc.*, 490 F.3d 86 (1st Cir. 2007).

15       Here, the issues before this Court involve alleged violations of the 14th
16  Amendment of the United States Constitution and alleged violations of Federal statutory
17  law, namely the Voting Rights Act. As such this Court's subject matter jurisdiction is
18  based on Federal subject matter jurisdiction. Therefore, as mentioned above federal law
19  is controlling as to the applicability of the doctrine of res judicata or collateral estoppel,
20  in a non-diversity action in a federal court.

21       Defendant relies on *Henrichs v. Valley View Dev.*, 474 F. 609, 615 for the
22  proposition that State law applies. In *Henrichs*, the Court considered an appeal that
23  stemmed from a quiet title action that began in Los Angeles Superior Court but was
24  resuscitated in federal court after the California courts ruled against appellants John and
25  Anne Henrichs ("Henrichs") on all issues.

26       The Court considered whether the district court had subject matter jurisdiction
27  over Henrichs' claims arising from a California state court judgment rendered against
28  them. After a series of real estate transactions among Henrichs, Valley View

Development ("Valley View"), Marc Gelman, Michael Blaha, and Granada Plaza Associates ("GPA") turned sour, Valley View filed a claim to quiet title in Los Angeles County Superior Court. Henrichs cross-claimed, alleging breach of contract and indemnification claims. The Superior Court, the California Court of Appeal, and the California Supreme Court all held in favor of Valley View and denied Henrichs' relief on all claims.

Having extinguished all avenues for relief in the California courts, Henrichs filed suit in the United States District Court for the Central District of California. The district court held that it lacked jurisdiction under the *Rooker-Feldman* doctrine to review the state court judgment and Henrichs' associated claims and consequently dismissed the action. The Court of Appeal affirmed, albeit on slightly different grounds.  The Court of Appeal determined that at issue was whether Henrichs' claims are barred by the *Rooker-Feldman* doctrine which, in general terms, prevents "a party losing in state court ... from seeking what in substance would be appellate review of the state judgment in a United States district court." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06.  The Court held that looking at each claim individually, as we must do, we conclude that two claims are barred by *Rooker-Feldman*, one claim fails on mootness grounds, and another based upon res judicata.

The *Henrichs* case is distinguishable from this case in that the causes of action in the original state court action were solely based on California state law and that any jurisdiction a Federal Court would have over the case would be based upon diversity jurisdiction.  Here, most of the issues surrounding the case filed with the California Supreme Court were based on Federal Constitutional issues and Federal statutory law. They were only filed with the California Supreme Court because recent changes in the California Constitution mandated that the case be filed in the California Supreme Court. This case is not barred by the *Rooker-Feldman* doctrine.  There is no question that the Federal Court has subject matter jurisdiction over the allegations filed in this case. Therefore, as case law makes clear, in non-diversity actions federal law is controlling as

1    to the applicability of the doctrine of res judicata or collateral estoppel where the issues

2    involved in the prior judgment were issues of federal law.  Thus, in this case the Court

3    should apply Federal law as it relates to its determination as to whether this matter is

4    barred by Res Judicata.

5

6        B.    *APPLYING FEDERAL LAW THIS CASE IS NOT BARRED BY RES*

7              *JUDICATA BECAUSE THERE WAS NO FINAL JUDGMENT ON THE*

8              *MERITS*

9        Pursuant to Federal law Res Judicata involves a three-step inquiry that analyzes

10   whether (1) the parties are the same, (2) the claims are the same, and (3) whether there

11   has been a final judgment on the merits.  *Montana v. United States*, 440 U.S. 147, 153

12   (1979)

13       Traditionally, a judgment is on the merits when it amounts to a decision as to the

14   respective rights and liabilities of the parties, based on the ultimate fact or state of facts

15   disclosed by the pleadings or evidence, or both, and on which the right of recovery

16   depends, irrespective of formal, technical, or dilatory objections or contentions.

17   However, the U.S. Supreme Court has cautioned that over the years the meaning of the

18   term "judgment on the merits" has gradually undergone change," and it has come to be

19   applied to some judgments which do not pass upon the substantive merits of a claim and

20   hence do not, in many jurisdictions, entail claim-preclusive effect.  *Semtek Intern. Inc v.*

21   *Lockheed Martin Corp.*, 531 U.S. 497 (2001).  The original connotation of an "on the

22   merits" adjudication is one that actually passes directly on the substance of a particular

23   claim before the court, the prototypical judgment on the merits being one in which the

24   merits of a party's claim are in fact adjudicated for or against the party after trial of the

25   substantive issues.  *Ibid.*  However, given the evolution of the meaning of the phrase, "on

26   the merits" over time, it is no longer strictly true that all judgments denominated "on the

27   merits" are entitled to claim-preclusive effect.  *Ibid.*

28   / / /

8

1    Here there was never a final judgment on the merits.  The Supreme Court merely

2    issued a minute order denying the request.  There was no hearing, no witnesses, and no

3    oral argument.  There was no flushing out of the issues that the Supreme Court was

4    basing Plaintiffs' judgment.  Also, even though the California Supreme Court received

5    thousands of pages of documents they issued their denial in one week.  It appears that

6    the Court treated this matter as discretionary in nature and decided to exercise their

7    discretion and not hear the matter.

8

9    C.    *ASSUMING STATE LAW APPLIES THIS CASE IS STILL NOT BARRED*

10          *BY RES JUDICATA BECAUSE THERE WAS NOT A FINAL JUDGMENT*

11          *ON THE MERITS.*

12    Under California law, "res judicata" precludes a party from re-litigating (1) the

13   same claim, (2) against the same party, (3) when that claim proceeded to a final

14   judgment on the merits in a prior action. *Adam Bros. Farming, Inc. v. County of Santa*

15   *Barbara,* 604 F.3d 1142 (9th Cir. 2010).

16    Under California Law to operate as res judicata a judgment must have been on the

17   merits. *Manufactured Home Comtys., Inc. v. City of San Jose,* 420 F.3d 1022, 1031 (9th

18   Cir. 2005) A judgment is on the merits if the substance of the claim is tried and

19   determined. *Beverly Hills Nat. Bank v. Glynn* 16 Cal.App.3d 274 (1971).  As ordinarily

20   used, "merits" refers to the merits of the whole case as applied to the use of the prior

21   adjudication as a bar or an estoppel. *Heine Piano Co. v. Bloomer,* 183 Cal. 398 (1920).

22    To support their contention that a summary denial of a writ of mandate constitutes

23   a full determination on the merits defendants cite *Napa Valley Electric Co. v. Railroad*

24   *Commission,* 251 U.S. 366 and *Pacific Tel. & Tel. Co. v. Public Utilities Com.,* 600 F.2d

25   1309, 1312 (9th Cir. 1979).

26    In *Pacific Tel.,* telephone companies sought preliminary injunction prohibiting

27   implementation of rate order of Public Utilities Commission of California. The United

28   States District Court for the Central District of California denied preliminary injunction,

9

1   and telephone companies appealed. The Court of Appeals held that California Supreme
2   Court's denial of writ of review of rate order without opinion constituted final judgment
3   entitled to res judicata effect.  The Court in *Pacific Tel.* stated that "the United States
4   Supreme Court and this court have acknowledged that, under California law, the
5   California Supreme Court's denial of writs of review of rate decisions constitutes a
6   denial on the merits and have held that such denials are entitled to res judicata effect in
7   federal courts. *Pacific Tel. & Tel. Co. v. Public Utilities Com.*, 600 F.2d 1309, 1312 (9th
8   Cir. 1979).

9        However, the Court appeared to suggest that its decision and the decision in *Napa*
10  were limited to the review of appeals of Public Utilities Commissions rate decisions.  In
11  *Pacific Tel.* the Court discussed potential exceptions to this rule.  The Court discussed
12  *People v. Medina*, 6 Cal.3d 484 (1972).  *People v. Medina* involved a case of a criminal
13  defendant who filed a writ of mandate in response to the denial of his motion to
14  suppress.  The *Pacific Tel.* court while discussing *Medina* infers that the rule outlined
15  *Napa Valley* is subject to exception in certain circumstances.  Also, in discussing
16  *Medina* the following language from the Court again suggests that these cases are
17  limited to their facts.  "In short, we conclude that *Medina* did not undermine the long-
18  followed California rule that the Supreme Court's denial of a writ of review <u>of a rate</u>
19  <u>order without opinion</u> constitutes a final judgment entitled to res judicata effect.
20  Therefore, *Napa Valley*, involving a situation almost identical to the case before us,
21  mandates application of res judicata in the present case."[1]

22       Applying California law there was never a final judgment on the merits in
23  *Radanovich v. Bowen, et al.*  The California Supreme Court merely issued a minute
24  order denying the request.  There was no hearing and no oral argument.  Also, even
25  though the California Supreme Court received thousands of pages of documents they
26
27  _____
28  [1] Plaintiffs do not cite Medina for any other reason than the fact that the California Supreme Court suggests there could be exceptions to the rule in *Napa Valley.*

1    issued their denial in one week.   It appears that the Court treated this matter as

2    discretionary in nature and decided to exercise their discretion and not hear the matter.

3

4    IV.   STATE LAW CAN NOT PRECLUDE FEDERAL REMEDIES

5         State law cannot preclude a Federal remedy unless it is clear that the Federal

6    statute explicitly or implicitly indicates that Congress intended the statute to defer to

7    state law in situations like the one at issue.  Here, it is clear that Congress never intended

8    that the Voting Rights Act of 1965 would defer to state law.   In fact, in light of the

9    circumstances that necessitated the passage of this land mark legislation to suggest that

10   Congress would want the Voting Rights Act to defer to State law would be ludicrous.

11        In *Adams Fruit Co., Inc. v. Barrett* 494 U.S. 638 (1990) injured farm workers

12   brought action under Migrant and Seasonal Agricultural Worker Protection Act for

13   injuries received while being transported in a van owned by their employer. The United

14   States District Court found the action was barred by an exclusive remedy provision of

15   the Florida's workers' compensation laws.  Workers appealed. The Court of Appeals

16   reversed and remanded. Certiorari was granted. The Supreme Court held that exclusivity

17   provisions in state workers' compensation laws do not bar migrant workers from

18   bringing private right of action for intentional violations of Migrant and Seasonal

19   Agricultural Worker Protection Act. The *Adams Fruit* Court identified "two doctrinally

20   related issues" as relevant to the determination of whether a federal right of action is

21   withdrawn where state law establishes workers' compensation as an exclusive remedy:

22   (1) First we must decide whether, as a matter of statutory construction, [the federal

23   statute] permits [plaintiffs] to pursue federal remedies under such circumstances. (2)

24   Second, if [the statute] permits simultaneous recovery under federal and state law, we

25   must determine whether, under preemption principles, [the statute] precludes giving

26   effect to state exclusivity provisions that purport to withdraw federal remedies.

27        In other words, the *Adams Fruit* analysis requires a court to answer two related

28   questions: (1) Does the federal statute explicitly or implicitly indicate that Congress

1    intended the statute to defer to state law in situations like the one at issue and (2) If it

2    does not, do preemption principles mandate that all or part of the state law should be

3    denied in light of Congress' intent in enacting the federal law?

4        Here, the California Constitution states that "the Supreme Court [of California]

5    has original and exclusive jurisdiction in all proceedings in which a certified final map is

6    challenged." Cal. Const. art. XXI, § 3(b)(1). Clearly, the California Constitution implies

7    that any challenge to certified maps must be filed directly with the California Supreme

8    Court. Plaintiffs in this case complied with the mandates of the California Constitution.

9    However, as case law makes clear, State law cannot preclude potential Federal remedies

10   from Plaintiffs when it is clear that Congress did not intend to have the Federal Statute

11   defer to state law.  The Voting Rights Act of 1965 was passed amid great civil strife.

12   African American citizens were being denied their rights to effectively exercise their

13   right to select their candidates of choice because of State law.  The Voting Rights Act

14   was intended to provide a Federal remedy for egregious State practices.   It makes

15   absolutely no sense that within that context that the Congress intended the VRA to defer

16   to State law.  Therefore, applying the test from *Adams Fruit*, the Plaintiffs in this case

17   are entitled to pursue the potential Federal remedies provided for in this cause of action.

18

19   **V.     PLAINTIFFS THIRD CLAIM FOR RELIEF STATES SUFFICIENT FACTS**

20   **TO SUPPORT A CLAIM UNDER SECTION 5 OF THE VOTING RIGHTS**

21   **ACT.**

22       In *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), a suspected terrorist was

23   arrested on criminal charges and detained by federal officials.  In the *Ashcroft* decision,

24   the Supreme Court referenced the standard set forth in *Bell Atl. Corp. v. Townbly*, 550

25   U.S. 544 (2007) in determining whether the complaint was sufficient to survive a motion

26   to dismiss.  A claim has facial plausibility when the pleaded factual content allows the

27   court to draw the reasonable inference that the defendant is liable for the misconduct

28

1    alleged. Id., at 556. "[D]etailed factual allegations" are not required, *Bell Atl. Corp. v.*
2    *Twombly*, 550 U. S., at 555.

3        Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short
4    and plain statement of the claim showing that the pleader is entitled to relief." Plaintiff's
5    Third Claim for Relief stated, "The plan adopted by the California Redistricting
6    Commission has not received the proper approval by §5 of the Voting Rights Act. The
7    plan was retrogressive and if adopted would limit Latino opportunity districts and
8    therefore is unlikely to be approved pursuant to §5.     Therefore this proposed
9    congressional plan violates §5 of the Voters Rights Act (Compl. ¶ 50).

10       The Defendants were part of the Redistricting Committee, and it follows that any
11   changes made to the districts were based on their conduct. A limited amount of districts
12   represented by Latinos, as alleged in the complaint, provides a facial plausibility which
13   allows the court to draw the reasonable inference that Defendants are liable for the
14   alleged limited Latino opportunity districts.  When determining whether a complaint
15   states a plausible claim is context-specific, the reviewing court may draw on its
16   experience and common sense. *Id.*, at 556.

17       In regards to §5 preclearance districts, Plaintiffs concedes that Los Angeles is not
18   subject to preclearance.  However, "Covered Jurisdictions" Under §5 of the Voting
19   Rights Act Were Intended to Prevent Discriminatory Redistricting by Federal
20   Preclearance, Not Deny Judicial Review. Section 5 of the Voting Rights Act was
21   designed to protect minority voting blocks during redistricting in geographic areas where
22   systematic discrimination had previously taken place.   As a preventative measure,
23   Section 5 required the designated areas receive federal preclearance.  In this case, the
24   plaintiffs are requesting judicial review after the redistricting resulted in a discriminatory
25   outcome.  Section 5 provides the preventative measure for protected districts, but can
26   still be used by the court as a historical measurement for discrimination after the
27   redistricting has occurred.

28

## VI.   CONCLUSION

For the reasons stated above, Plaintiff respectfully asks this Court to deny Defendants motion to dismiss.  Additionally, the Commission is not entitled to recover its attorney's fees and costs incurred.

DATED:   January 20, 2012

**BARIC TRAN & MINESHGNER**

By:

Steven D. Baric, Esq.
Attorney for Plaintiff

14